SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-219

| | |
|---|---|
| ASHLEY SCOTT AND THOMAS SCOTT<br><br>APPELLANTS<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** September 2, 2015<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. JV-2014-511-3]<br><br>HONORABLE THOMAS E. SMITH, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

The Benton County Circuit Court adjudicated the children of appellants Ashley and Thomas Scott dependent-neglected based on inadequate supervision. The Scotts argue that there was insufficient evidence to support the adjudication. We affirm.

### I.  *Dependency-Neglect*

A dependent-neglected juvenile is one who is at substantial risk of serious harm as a result of acts or omissions to the juvenile, a sibling, or another juvenile, including neglect. Ark. Code Ann. § 9-27-303(18)(A)(v) (Supp. 2013). "Neglect" means those acts or omissions of a parent that constitute, among other things, failure to appropriately supervise the juvenile that results in the juvenile's being left alone at an inappropriate age or placed in inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm. Ark. Code Ann. § 9-27-303(36)(A)(vii) & (viii). An adjudication hearing shall be held

SLIP OPINION

to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Supp. 2013).

## II. *Procedural and Factual History*

### A. First Adjudication

On June 26, 2014, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect as to the Scotts' five children.[1] Attached to the petition was an affidavit indicating that an officer with the Bella Vista Police Department had received a report that several children were standing outside the Scotts' home at night banging on windows with no apparent supervision. It was discovered that Thomas "T.J." Scott had left the children at home alone a few hours earlier to visit their mother at the hospital.[2] The officer observed human feces smeared on all four walls of a bedroom where two of the children were discovered inside a closet; a blanket covered with human feces hung from a ceiling fan; and there was broken glass on the floor. The officer stated that the parents had been arrested several times in the past for drug use and that both would be charged with five counts of endangering the welfare of a minor in the first degree. James Herford, a family-service worker with DHS, arrived and noted that, in addition to the officer's observations, there were bottles containing medication and what appeared to be a pellet gun sitting on a shelf in the living room within the children's reach. The children wore

---

[1]A.F. (DOB: 9-23-2003); T.F. (DOB: 7-28-2005); N.F. (DOB: 6-27-2007); I.S. (DOB: 11-16-2010); B.S. (DOB: 3-11-2012).

[2]There was testimony that Ashley had been injured in a four-wheeler accident.

dirty clothes and no shoes, and Herford wrote that it was obvious that the children had been walking through the glass. B.S. wore only a diaper that was full of feces, and T.F., who "appeared to be severely autistic," was observed playing with knives and placing inedible objects in his mouth. The affidavit also indicated that the Scotts had a history with the Children's Reporting and Information System (CHRIS) dating back to May 2010, but the allegations of three separate referrals were deemed "unsubstantiated."[3] DHS took a seventy-two-hour hold on the children on the bases of inadequate supervision, environmental neglect, inadequate shelter, and medical neglect.

The trial court entered an ex parte order for emergency custody and later an order finding probable cause to remove the children but authorizing a trial home placement of the children with the Scotts. On August 19, 2014, the trial court adjudicated the Scotts' children dependent-neglected due to inadequate supervision. The parents stipulated to the facts, and the case goal was reunification. The court authorized a trial home placement of I.S. and B.S. with the Scotts, and the three older boys were placed in the custody of their biological father, David Flannery. DHS implemented a case plan and offered services, including individual and family counseling, drug screening, and parenting classes. On October 21, 2014, on motion of the Scotts, the trial court ordered that custody of I.S. and B.S. be returned to the Scotts

---

[3]DHS subsequently filed an amended petition for emergency custody, updating the CHRIS history to reflect that allegations of environmental neglect in May 2010 were found to be true.



because the trial placement had exceeded sixty days.[4]

## B. Second Adjudication

On November 12, 2014, DHS filed a motion for ex parte emergency change of custody based on changed circumstances and allegations of inadequate supervision and substance abuse by Ashley. An affidavit authored by family-service worker Jessica Thompson indicated that on November 8, 2014, DHS received a hotline report that I.S. had been taken to the emergency room of a local hospital for possible ingestion of prescription pills; however, a subsequent medical exam revealed that there were no drugs in I.S.'s system. Thompson went to the Scotts' home to investigate, and Ashley explained what had occurred the prior day. Ashley said that, while she was in the bathroom, one of the boys had pushed a kitchen chair up to the refrigerator, opened her bottle of medication, and scattered pills on the floor. DHS did not plan on placing a hold on the children until Thompson contacted a police officer, who relayed information from T.J. that was somewhat contradictory to Ashley's version of events. Thompson was then instructed by her supervisor to return to the Scotts' home, administer drug screens, and do a pill count of the parents' medications. Ashley tested positive for benzodiazepines and oxycodone. Ashley explained that she had taken Xanax, along with Percocet and Tramadol. Ashley had a prescription for Xanax, and the bottle indicated that the prescription for ninety pills had been filled on October 28, 2014,

---

[4]Juveniles who are in the custody of the department shall be allowed trial placements with parents for a period not to exceed sixty days. Ark. Code Ann. § 9–27–355(c)(1) (Supp. 2013). At the end of the sixty days, the court shall either place custody of the juveniles with the parent, or the department shall return the juveniles to a licensed or approved foster home, shelter, or facility. Ark. Code Ann. § 9–27–355(c)(2).

with instructions for Ashley to take one pill three times daily. In explaining the discrepancy with the number of remaining pills in the bottle, Ashley admitted that she had been taking twice the prescribed amount but assured Thompson that her doctor was aware of it.

Thompson's affidavit also indicated that the Scotts had a history with DHS in both Arkansas and Oklahoma. In August 2011 in Oklahoma, there was a report of failure to protect, beating/hitting/slapping, and inadequate and dangerous shelter. In September 2011, there was an allegation of physical abuse. In both instances, the children were placed in foster care. The affidavit also indicated that there were ongoing investigations in Arkansas as to T.J.: in October 2014, there was an allegation of cuts, bruises, and welts, and in November 2014, there were allegations of striking a child, throwing a child, threat of harm, and cuts, bruises, and welts.

At the adjudication hearing, Thompson testified that when she went to the Scotts' home on November 8, 2014, she had asked T.J. whether he could pass a drug screen and provide her with a list of his prescriptions and that he had told her that he could not. Ashley was not able to provide documentation of her prescriptions for Percocet and Tramadol at that time. Thompson said that there were fifty-two pills missing from Ashley's prescription for Xanax and that she had been concerned that Ashley was misusing her prescription and not adequately supervising the children. After she spoke with Officer Brad Harris with the Gravette Police Department, Thompson was left with the impression that Ashley had been asleep or passed out on the couch due to overmedicating herself, and was not in the bathroom as she had claimed. According to Thompson, there was a prior removal for

inadequate supervision after the Scotts' home had been destroyed in a fire in July 2014.

Officer Harris testified that T.J. had told him that he thought Ashley had been asleep because he had to pound on the door to be let inside on arriving home from work. Harris stated that Ashley denied having been asleep and that he did not think she seemed drowsy or under the influence.

Shannon Saindon, a caseworker with DHS, testified that Ashley had prescriptions for Xanax and oxycodone and had never tested positive for a drug that had not been prescribed to her. Saindon thought that T.J. was taking only one prescribed pain medication for his shoulder but stated that he had tested positive in the past for several different prescription drugs. Two drug-and-alcohol court-ordered assessments from Decision Point indicated that there was a low probability of a substance-dependence disorder as to both T.J. and Ashley, but Saindon said that the evaluations did not surprise her because they were "self-reporting assessments." Ashley testified that on November 7, 2014, she had left the boys in the living room and gone to the bathroom. When she emerged, she saw the pills scattered on the floor. She said, "I didn't think, you know, five seconds, I didn't think." She denied being asleep on the couch. Ashley said that doubling her dose of Xanax helped to calm her and that she thought she had gotten authorization to do that from someone named Becky at her doctor's office, although she knew that her doctor was on maternity leave. Ashley agreed with counsel for DHS that "[I]t was probably not my brightest day to double my prescriptions." Ashley stated that she did not tell the court or anyone at DHS about T.J.'s pending felony charges for endangering the welfare of a minor because she thought that everyone already

knew about it.

T.J. denied telling Officer Harris that Ashley was asleep on the couch, but rather said, "[I]t looked like they may have taken a nap." T.J. testified that the only reason he told Thompson that he could not pass a drug test was because he knew the test would be positive due to his prescribed medications.

At the conclusion of the second adjudication hearing, the trial court found inadequate supervision in that the children were in Ashley's care; she admittedly took Xanax contrary to the prescription; and one of the children had gained access to the pills. The judge said, "That whatever we've taken the kids out [of] previously, still is not fixed." He said that considering Ashley's admission, combined with the history of inadequate supervision and the pending felony charges for endangering the welfare of minors, the children were dependent-neglected.

### III.  *Standard of Review*

The burden of proof in dependency-neglect adjudications is a preponderance of the evidence. *Gaer v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 516. On appeal, this court reviews the trial court's findings de novo, giving due regard to the court's opportunity to judge the credibility of witnesses. *Id*. Where the sufficiency of the evidence is challenged on appeal, this court will not reverse the trial court's findings unless they are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

SLIP OPINION

IV. *Argument and Discussion*

The Scotts contend that the November 2014 incident "grew in factual spin" and that "only the inflated version would support a finding of dependency/neglect." The Scotts point to Thompson's testimony that DHS did not take a hold on the children because of I.S.'s possible ingestion of pills, but rather because Thompson thought "maybe [Ashley's] an addict." The Scotts argue that there was no evidence that Ashley's misuse of her prescription resulted in any failure by her to appropriately supervise the children.

DHS argues in its brief that this case is moot because the second adjudication hearing was unnecessary given that inadequate supervision remained the reason for the children's removal after the November 2014 incident. The Scotts did not file a reply brief to address this contention. We agree with DHS.

"If the juvenile has previously been adjudicated a dependent-neglected juvenile in the same case in which a motion for a change of custody has been filed to remove the juvenile from the custody of a parent, a subsequent adjudication is required if the ground for the removal is not the same as the ground previously adjudicated." Ark. Code Ann. § 9-27-327(a)(3) (Supp. 2013). We first note that the trial court did not close the case after awarding custody of the children to the Scotts and David Flannery following the first adjudication. Both adjudications stemmed from allegations of inadequate supervision; thus, pursuant to section 9-27-327(a)(3), the second adjudication was not necessary. It had no practical effect on the Scotts' position because their children were *still* dependent-neglected as a result of the first adjudication.

In any event, we are not left with a definite and firm conviction that a mistake was made. Whether Ashley was in the bathroom or was asleep or passed out on the couch, she left her young children unattended for a sufficient amount of time for one of those children to access her prescribed medication that she had left unsecured. Moreover, during the time that her children were unattended, Ashley had in her system double the amount of prescribed Xanax, along with Percocet and Tramadol. The trial court could reasonably conclude that these medications had an impact on Ashley's ability to appropriately supervise the children. To the extent the second adjudication is not superfluous, we cannot say that the trial court clearly erred in adjudicating these children dependent-neglected.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.